UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CYNTHIA MARIE LONG, individually, and as Personal Representative of the Estate of Dustan Dominic Long,<br><br>Plaintiff - Appellant,<br><br>V.<br><br>CITY AND COUNTY OF HONOLULU; et al.,<br><br>Defendants - Appellees. | No. 05-16567<br>D.C. No. CV-02-00271-SPK/KSC<br><br>**JUDGMENT** |

Appeal from the United States District Court for the District of Hawaii (Honolulu).

This cause came on to be heard on the Transcript of the Record from the United States District Court for the District of Hawaii (Honolulu) and was duly submitted.

On consideration whereof, it is now here ordered and adjudged by this Court, that the judgment of the said District Court in this cause be, and hereby is **AFFIRMED**.

Filed and entered 12/21/07

A TRUE COPY 2/13/08
ATTEST
CATHY CATTERSON
Clerk of Court
by:
Deputy Clerk
This certification does constitute the mandate of the court.

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CYNTHIA MARIE LONG, individually, and as Personal Representative of the Estate of Dustan Dominic Long,

  Plaintiff-Appellant,

v.

CITY AND COUNTY OF HONOLULU; PATRICK A. STERLING, Officer, Honolulu Police Department; JOHN DOES, 1-10,

  Defendants-Appellees.

No. 05-16567

D.C. No.
CV-02-00271-SPK/KSC

OPINION

Appeal from the United States District Court
for the District of Hawaii
Samuel P. King, Senior District Judge, Presiding

Argued and Submitted
November 5, 2007—Honolulu, Hawaii

Filed December 21, 2007

Before: Diarmuid F. O'Scannlain, A. Wallace Tashima, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

16613

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO
© 2007 Thomson/West.

The summary, which does not constitute a part of the opinion of the court, is copyrighted

## SUMMARY

### Individual Rights/Civil Rights

Appellant Cynthia Long filed a civil rights suit for damages in district court in Hawaii under 42 U.S.C. § 1983 against appellees including the city of Honolulu and police officer Patrick Sterling, contending that Sterling used deadly force against her late son in violation of his Fourth Amendment rights. Long also alleged state law violations. Prior to taking the fatal shot, Sterling had observed Long's son's agitated behavior, heard him threaten to shoot the police, observed him carrying a .22 caliber rifle, and knew that he had previously shot at a car full of people and wounded two people therein earlier that night. Sterling shot Long's son after fellow officers radioed that he was shooting at them. The district court granted the city's motion for summary judgment based on qualified immunity, ruling that there was no constitutional violation and no basis for municipal liability, and entered final judgment.

Long appealed.

[1] The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a rea-

sonable person would have known. [2] Claims of excessive and deadly force are analyzed under the Fourth Amendment's reasonableness standard. Factors to consider include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. [3] Prior to taking the fatal shot, Sterling had observed Long's agitated behavior, heard him threaten to shoot the police, observed him carrying a .22 caliber rifle, and knew that he had previously shot at a car full of people and wounded two people therein earlier that night. Under these circumstances, when fellow officers radioed that Long was shooting at them, Sterling had probable cause to believe that Long posed an immediate danger to these officers. In the exigent circumstances of the night, Sterling acted in an objectively reasonable manner.

[4] Whether Long actually fired his rifle at the officers was immaterial. It was enough that Sterling heard the radio transmission and observed Long point the rifle in the officers' direction. [5] It had to be held that Sterling did not violate Long's Fourth Amendment rights and that he is entitled to qualified immunity. [6] And, since no constitutional violation occurred, the city could not be held liable.

[7] A federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in 28 U.S.C. § 1367(c). Long's state law claims for the intentional infliction of emotional distress; gross negligence; negligent training, supervision, and control; and punitive damages were meritless and were properly dismissed. The judgment of the district court had to be affirmed.

### COUNSEL

Jack Schweigert, Honolulu, Hawaii, for the plaintiff-appellant.

Brian Y. Hyane, Honolulu, Hawaii, for the defendants-appellees.

OPINION

MILAN D. SMITH, JR., Circuit Judge:

Cynthia Long (Ms. Long), mother of decedent Dustan Long (Long), appeals the grant of a motion for summary judgment in favor of Defendants, City and County of Honolulu, and police officer, Patrick Sterling. Ms. Long primarily contends that Sterling used deadly force against her son in violation of his Fourth Amendment rights and that the district court erred in granting Sterling qualified immunity. Because we conclude that Sterling acted in an objectively reasonable manner under the circumstances, we affirm the district court's judgment. *See Long v. City & County of Honolulu*, 378 F. Supp. 2d 1241 (D. Haw. 2005).

**I. Factual Background**

On the night of June 3, 2001, Long invited people to a party at his home. At approximately 2 a.m., an uninvited group arrived, harassed another guest, and instigated a fight. In response, Long fired shots from a .22 caliber rifle—once to demand that all of his guests leave and again shortly thereafter in an attempt to stop several uninvited persons from beating his friend, Chauncey Jarvis. As the uninvited group got into a car to leave, Long fired several more shots in their direction, hitting two of the passengers, who then called the police.

As the party ended, Long and his friend, Kurt Umeno, carried Jarvis to the back of the house by the Jacuzzi, where he lay until the police found and awakened him several hours later.

The police arrived soon thereafter and were later replaced by a SWAT team. The SWAT team manned the perimeter of the house. Long and Umeno spoke several times over the phone. Umeno claims that Long was scared that the police would shoot him and that he wanted to surrender. In any event, the police told Long to surrender, but he did not, and initially barricaded himself in the house.

Long was agitated throughout the night and held a .22 caliber rifle as he walked around the property. He shouted various threats at the police. For example, at 4:07 a.m., he told the police that they had ten seconds to get the "fuck out of his yard" and started a countdown. The evidence suggests that he then fired a shot toward the front of the house. He also threatened to shoot out the lights the police were shining on the property.

Officers Sterling and Dalbec were positioned as snipers on the roof of a house across the street, some 220 feet away from where Long was located. Immediately before Sterling fatally shot Long, Officers Marini and Cannella were positioned to the side of the house, behind a large bamboo hedge. Long was walking back and forth between a carport and a garage just on the other side of the hedge where officers Marini and Cannella were located and was aware of the officers' presence.

According to the CAD report, at 4:47 a.m., officers Marini and Cannella reported that they jumped into a ditch for cover because Long was shouting threats.[1] Officer Marini claims

---

[1] A CAD report is a stenographic record created by a radio dispatcher whose duty it is to type everything heard over the radio frequency, which also marks the time of the statements fairly accurately.

Contrary to the CAD report, Marini and Cannella testified that they jumped into the ditch as Long was shooting at them at 4:52 a.m., creating a discrepancy of four minutes between the CAD report and their testimony. This discrepancy is not material for the purposes of determining whether it was objectively reasonable for Officer Sterling to shoot Long.

that he heard Long yell, "I told you fuckers get the fuck back. Have some of this." At 4:51 a.m. the officers said over the radio, "Shots fired. He just shoot [sic] at us."

Upon hearing this radio call, Sterling shot Long. According to Sterling, he saw Long raise his rifle to about chest level and fire one shot immediately prior to the radio call. The police, however, were not able to recover a shell casing from this alleged shot, so we assume no shot was actually fired. Sterling claims that he then lost sight of Long. Ms. Long's expert contends that Sterling could not have lost sight of Long.

The police waited for a light armored vehicle to arrive before entering the property. The CAD report indicates that the police attempted to contact Long by calling the house phone, were unsure where Long was, and did not know whether it was safe to enter the premises. After the police finally entered the property, Long was found dead at 6:23 a.m., with a rifle located to the right of his body.

## II. Procedural Background

Ms. Long, in her individual capacity and as representative of Long's estate, commenced this action against Sterling and the City and County of Honolulu. Ms. Long sought damages under 42 U.S.C. § 1983 for use of excessive force against Long, the city's failure to render medical aid, and the municipality's failure to train officers on the use of deadly force. She also brought related state law claims.

Defendants moved for summary judgment, arguing that Sterling was entitled to qualified immunity and that no evidence existed to support municipal liability. The motion was denied without prejudice to allow for more discovery. Defendants later renewed their motion. The district court then granted the Defendants' motion, holding that there was no constitutional violation and no basis for municipal liability, and entered final judgment. Ms. Long timely appeals.

## III. Standard of Review and Jurisdiction

We review the grant of a motion for summary judgment de novo. *Blankenhorn v. City of Orange*, 485 F.3d 463, 470 (9th Cir. 2007). The district court's decision on qualified immunity is also reviewed de novo. *Id.* Under this standard, the facts are viewed in the light most favorable to the nonmoving party, and all reasonable inferences are drawn in that party's favor. *Brosseau v. Haugen*, 543 U.S. 194, 195 n.2, 197 (2004); *Blankenhorn*, 485 F.3d at 470. In a Fourth Amendment excessive force case, "defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

We have jurisdiction under 28 U.S.C. § 1291.

## IV. Discussion

### A. Qualified Immunity

[1] The defense of qualified immunity "shields government officials performing discretionary functions from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Scott*, 39 F.3d at 914 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Where an officer raises this defense, we undertake a two part analysis. First, we ask, "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no violation occurred on the alleged facts, this ends the inquiry. *Id.* "On the other hand, if a violation could be made out on a favorable view of the

16620                           LONG v. HONOLULU

parties' submissions," we then look to see whether the violated right was clearly established. *Id.*

[2] Claims of excessive and deadly force are analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). We must determine whether this shooting was objectively reasonable in light of the facts and circumstances confronting the officers "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396-97. The use of deadly force is "reasonable only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Scott*, 39 F.3d at 914 (quoting *Garner*, 471 U.S. at 3). We must allow for "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham*, 490 U.S. at 396-97). Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

[3] We hold that Officer Sterling's conduct meets the objective reasonableness standard. Prior to taking the fatal shot, Sterling had observed Long's agitated behavior, heard him threaten to shoot the police, observed him carrying a .22 caliber rifle, and knew that he had previously shot at a car full of people and wounded two people therein earlier that night. Under these circumstances, when fellow officers radioed that Long was yelling threats at them and then radioed that Long was shooting at them, Sterling had probable cause to believe that Long posed an immediate danger to these officers. In the exigent circumstances of the night, Sterling acted in an objectively reasonable manner.

LONG v. HONOLULU                           16621

We are mindful that we must be wary of self-serving accounts by police officers when the only non-police eyewitness is dead. *See Scott*, 39 F.3d at 915. We note, however, that here, unlike the situation in *Scott*, we have the benefit of multiple eye witnesses and a CAD report that fairly accurately recorded the SWAT team's activities on the night of Long's death.

[4] Ms. Long's claims of factual error in the police accounts do not change our analysis. From the perspective of a reasonable officer in Sterling's position, it is immaterial whether Marini and Cannella jumped into the ditch at 4:47 or 4:52 a.m. Though a closer question, whether Long actually fired his rifle at these officers is also immaterial. It is enough that Sterling heard the radio transmission and observed Long point the rifle in the officers' direction.

[5] Accordingly, we hold that Officer Sterling did not violate Long's Fourth Amendment rights and that he is entitled to qualified immunity.

**B.   Municipal Liability**

Ms. Long contends that the city is also liable because it failed to properly train the officers on the use of deadly force, ratified Sterling's unconstitutional conduct, failed to properly supervise and control its officers, and failed to render medical aid to Long.

[6] If no constitutional violation occurred, the municipality cannot be held liable and whether "the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (emphasis omitted).

We also reject the claim that the police officers were inadequately trained on the use of deadly force. "Only where a municipality's failure to train its employees in a relevant

respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). If there was no constitutional violation of Long's rights, there is "no basis for finding the officers inadequately trained." *Scott*, 39 F.3d at 916.

Similarly, the city cannot be held liable for the failure to render medical aid without evidence that the failure to render aid was pursuant to a city policy or custom. *City of Canton*, 489 U.S. at 388-89 & n.8. Ms. Long claims that the city is liable "because of its duty to render reasonable care to the suspect it shoots." The municipality, however, cannot be liable under a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 691 (1978).

## C. State Law Claims

[7] Ms. Long contends that the district court abused its discretion by retaining jurisdiction over pendent state claims after the original federal claims had been dismissed. The retention of jurisdiction was proper. "[A] federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in [28 U.S.C.] § 1367(c) . . . ." [2] *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc).

---

[2] 28 U.S.C. § 1367(c) states:

The district court may decline to exercise supplemental jurisdiction over a claim . . . if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

On appeal, Ms. Long's state law claims are for the intentional infliction of emotional distress, gross negligence, and negligent training, supervision, and control. She also makes a request for punitive damages.[3] We hold that these state law claims are meritless and were properly dismissed. Accordingly, Ms. Long's punitive damage claims also fail.

### 1) Intentional Infliction of Emotional Distress

In Hawaii, the elements of an action for intentional infliction of emotional distress are adopted from the Restatement (Second) of Torts § 46 (1965) and are: 1) that the conduct allegedly causing the harm was intentional or reckless, 2) that the conduct was outrageous, and 3) that the conduct caused 4) extreme emotional distress to another. *Hac v. Univ. of Hawaii*, 73 P.3d 46, 49 (Haw. 2003). The restatement defines outrageous as "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Nagata v. Quest Diagnostics, Inc.*, 303 F. Supp. 2d 1121, 1127 (D. Hawaii 2004) (quoting Restatement (Second) of Torts § 46, cmt. d).

Sterling's behavior could not be outrageous because he acted in an objectively reasonable manner. The district court properly dismissed this claim.

### 2) Gross Negligence

Gross negligence is the "entire want of care which would raise a presumption of conscious indifference to consequences." *Yoshizawa v. Hewitt*, 52 F.2d 411, 413 (9th Cir.

---

[3] Ms. Long also pleaded wrongful death and negligent infliction of emotional distress at the district court level. Since she did not argue these claims on appeal, we do not address them here. We also do not address the defense of qualified privilege available under Hawaii state law because Defendants failed to raise the issue. *See Towse v. Hawaii*, 647 P.2d 696, 702 (1982).

1931) (construing Hawaii territorial law). Without further explanation, Ms. Long points to three things as evidence of gross negligence: 1) failure to render medical aid, 2) the estimated six shootings per year that occurred under the deadly force policy in effect at the time of Long's shooting, and 3) the Chief's ratification of Sterling's conduct without inquiring further into some inconsistencies in the evidence.

The district court did not err in finding no evidence of gross negligence. The police force's decision to wait for a light armored vehicle for safety reasons does not rise to the level of conscious indifference, even if the delay may have contributed to Long's death. Moreover, there is no evidence in the record that the deadly force policy and the Chief's investigation were inadequate and contributed to Long's death.

### 3) Negligent Training, Supervision, and Control

Because there is no evidentiary basis to conclude that the city was grossly negligent in its training of its police officers, the claim of negligent training, supervision, and control necessarily fails.

The judgment of the district court is

**AFFIRMED.**

A TRUE COPY
ATTEST   2/13/08

CATHY CATTERSON
Clerk of Court

by:
Deputy Clerk

This certification does constitute the [illegible] of the court.